IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA }<br>}<br>}<br>v.    }<br>}<br>WILLIAM MERRIWEATHER, JR., }<br>}<br>Defendant.    } | Case No. 2:07-cr-00243-RDP-JEO |

### MEMORANDUM OPINION

Before the court is the Government's Motion to Amend the Notice of Intent to Seek the Death Penalty (Doc. 224). Defendant William Merriweather, Jr., through counsel, has filed a Response to Government's Motion to Amend Death Notice, opposing the Government's motion (Doc. 262). After considering the record and the parties' submissions and arguments, the court makes the following findings of fact and conclusions of law.

I.    **Background and Procedural History**

The Government alleges that William Merriweather, Jr. robbed the Bessemer, Alabama branch of Wachovia Bank on May 14, 2007. During the offense, Merriweather is alleged to have shot four bank employees, killing two of them and wounding two others. (Doc. 1 (sealed) at 1-4). Merriweather took approximately $11,255 in cash from the bank and exited the bank with a hostage, bank manager Myron Gooding. (Doc. 4 (sealed) at 2). Merriweather was shot by police officers and apprehended while attempting to leave the scene. (Doc. 4 (sealed) at 2). He has remained in custody since that time.

A federal grand jury empaneled in the United States District Court for the Northern District of Alabama returned a five-count indictment against Merriweather on June 27, 2007. (Doc. 1(sealed)). The indictment alleged the following violations:

Count One - armed bank robbery by force or violence resulting in death in violation of 18 U.S.C. §§ 2113(a), (d) and (e);

Count Two - armed robbery with forced accompaniment in violation of 18 U.S.C. § 2113(a) and (e);

Count Three - using or carrying a firearm "during and in relation to [a] crime of violence" in violation of 18 U.S.C. § 924(c)(l)(A);[1]

Count Four - violation of 18 U.S.C. §§ 924(c) and (j) by using or carrying a firearm during and in relation to a crime of violence resulting in the death of Eva Hudson;

Count Five - violation of 18 U.S.C. §§ 924(c) and (j) by using or carrying a firearm during and in relation to a crime of violence resulting in the death of Sheila Prevo.[2]

(Doc. 1 (sealed)).

The Grand Jury also returned a Notice of Special Findings for Counts One, Four, and Five, finding that Merriweather was age 18 or over at the time of the offenses, four statutory threshold factors for death-eligibility enumerated in 18 U.S.C. § 3591(a)(2)(A)-(D) existed, and four statutory aggravating factors enumerated under 18 U.S.C. § 3592(c) applied:

    a.    that the Defendant knowingly created a grave risk of death to one or more persons in addition to the victims of the offense (18 U.S.C. §3592(c)(5));

    b.    that the offense was committed for pecuniary gain (18 U.S.C. § 3592(c)(8));

    c.    that the offense was committed after substantial planning and premeditation to cause the death of a person (18 U.S.C. § 3592(c)(9)); and

---

[1] Because the indictment charges Merriweather with "using and carrying" a firearm, his punishment under Count Three is capped at five years, which, in accordance with 18 U.S.C. § 924(c)(1)(D)(ii), shall run consecutively to any other sentence imposed. *United States v. Alleyne*, 133 S. Ct. 2151 (2013) (holding that any fact that increases the mandatory minimum punishment for an offense under § 924(c) to be an element that must be submitted to the jury and proven beyond a reasonable doubt).

[2] Because of the specific wording used in Counts Four and Five of the indictment, the government believes that in proving the two 924(j) offenses, it is obliged to establish the elements of premeditated murder rather than felony murder under 18 U.S.C. § 1111(a).

    d.    that the Defendant did intentionally kill and attempt to kill more than one person in a single criminal episode. (18 U.S.C. §3592(c)(16)).[3]

It is this last aggravating factor, alleging that Merriweather did "intentionally kill and attempt to kill more than one person in a single criminal episode," is the subject of the Government's motion to amend the death notice.

Merriweather was indicted by the State of Alabama on charges of Capital Murder, Attempted Murder, and Kidnapping in the First Degree. (Doc. 4 (sealed) at 3). During preliminary hearings in the state case, Merriweather's counsel notified the court that they intended to retain the services of a mental health professional. (Docs. 4 (sealed) at 3; 22 at 1). On July 13, 2007, the Government moved for Merriweather to submit to an evaluation to determine his competency to stand trial and his mental state at the time of the offenses. (Doc. 4 (sealed) at 3-4; see also Docs. 22 at 2, 152 at 2). However, the defense psychologist, Dr. Kimberly Svec Ackerson, could not reach a finding about Merriweather's competency after evaluating him (Doc. 22 at 2). United States Magistrate Judge John E. Ott then ordered that Merriweather be transported to the Bureau of Prisons for in-patient evaluation and treatment "to discern competency issues and to afford the defendant appropriate mental health treatment." (Doc. 22 at 3). Pursuant to Judge Ott's October 12, 2007 order, Merriweather was sent to the United States Medical Center for Federal Prisoners in Springfield, Missouri ("MCFP Springfield").

Merriweather was evaluated at MCFP Springfield for both sanity and competency from November 2, 2007 through January 14, 2008 by psychologist Christina Pietz. (Doc. 24 (sealed)). In January 2008, Dr. Pietz reported her findings to the court that Merriweather was competent to stand trial and did not suffer from a severe mental illness that would make him unable to

---

[3] Doc. 1 (sealed) at 6.

appreciate the nature and quality or the wrongfulness of his acts. (Doc. 24 (sealed) at 17, 27).

Shortly after Merriweather's return from MCFP Springfield, his counsel moved for a continuance, requesting more time to assess Merriweather's mental health and to determine if the Government intended to seek the death penalty. (Doc. 25). In that motion, Merriweather, through counsel, waived any statutory and constitutional objections to violations of his right to a speedy trial. Judge Ott granted the continuance on February 29, 2008. (Doc. 27).

The Government filed a notice of its intent to seek a death sentence on June 3, 2008, for the offenses charged in Counts One, Four and Five in the indictment. (Doc. 29). *See* 18 U.S.C.A. § 3593(a). The Government announced that it would rely on the following statutory aggravating factors if the case proceeded to a penalty phase: Grave Risk of Death to Additional Persons (enumerated in 18 U.S.C. § 3592(c)); Pecuniary Gain (18 U.S.C. § 3592(c)(8)); Substantial Planning and Premeditation (18 U.S.C. § 3592(c)(9)); Multiple Killings or Attempted Killings (18 U.S.C. § 3592(c)(16)). (Doc. 29 at 2-3). The Government also listed a number of non-statutory aggravating offenses in its Notice, one of which relates to "Contemporaneous Convictions" (and that is at issue in the present Motion to Amend). When the Government announced its intent to seek the death penalty in the case, Judge Ott appointed additional defense counsel under the Criminal Justice Act, 18 U.S.C. § 3005, to represent Merriweather. (Docs. 33-34, 37-38, 52-55).[4]

---

[4] Richard S. Jaffe and J. Derek Drennan were appointed as additional CJA counsel to represent Merriweather. (Docs. 33, 37, 52, 55). Attorneys Jaffe and Drennan joined Emory Anthony, Jr. (lead counsel) and Derrick K. Collins, who were already representing Merriweather in a state prosecution arising from the bank robbery. Attorneys Anthony and Collins filed notices of appearance in Merriweather's federal case on July 13, 2007 (Doc. 5), and July 17, 2007 (Doc. 20), respectively, and were appointed as CJA Counsel (Anthony, Docs. 34, 53) and (Collins, Docs. 38, 54). Another attorney, James O'Kelley, was appointed as Merriweather's Guardian ad Litem on July 29, 2011, during Merriweather's competency hearing, but withdrew from that role on August 20, 2013. (Doc. 151).

4

Judge Ott convened a hearing in August at which the parties requested an updated evaluation of Merriweather's mental state since his return from MCFP Springfield. (Doc. 79 at 1-2 (sealed)). Judge Ott issued an order on November 16, 2009, directing that Merriweather undergo a new evaluation at the Federal Medical Center at Butner, North Carolina ("FMC Butner"). (Doc. 79 (sealed)). From December 9, 2009, until April 18, 2011, Merriweather underwent an in-patient competency evaluation at FMC Butner. (Doc. 145 at 583, Tr. Vol. IV).

After Merriweather's evaluation at FMC Butner, this court conducted a competency hearing from July 25 to August 3, 2011, at which the court received extensive evidence and testimony. (Doc. 150). After briefing and argument, the court found Merriweather competent to stand trial and assist counsel in his defense on February 9, 2013. (Doc. 161). On September 24, 2013, defense counsel asked the court to reconsider Merriweather's competency (Doc. 181).[5] After hearing argument from the parties, the court denied the motion to reconsider. (Doc. 185).

On October 21, 2013, Judge Ott ordered that Merriweather be returned to MCFP Springfield for an updated mental health evaluation. (Doc. 199). The court affirmed that order after the defense moved for reconsideration. (Doc. 204). Merriweather was housed at MCFP Springfield from November 2013 to the end of December 2013. (Doc. 280 (sealed)).

The court set Merriweather's criminal jury trial for January 13, 2014 (Doc. 173). However, because of an initial concern raised by Dr. Pietz with respect to Merriweather's condition (as well as an inadvertent delay in medical records being submitted to the court and counsel), the trial date has been continued.[6]

---

[5] Doc. 181 included the following: Defendant's Motion to Declare the Defendant Currently Incompetent to Proceed; Motion to Hold a Pate Hearing to Determine Competency; Motion to Postpone Declaration of Defenses until the Defendant is Competent; Motion to Reconsider Order as to William Merriweather, Jr.

[6] *See* Merriweather's Reply to Government's Response to Motions to Set Aside Finding of Competency and Other Relief (Doc. 208) (Doc. 209 at 5 n. 6).

**II.     Discussion**

The Federal Death Penalty Act ("FDPA") sets forth the general procedures the Government utilizes in seeking the death penalty as a sentencing option for over sixty federal offenses. 18 U.S.C. § 3591, *et seq*. Under section 3591, a defendant is eligible to be sentenced to death if the Government proves that the Defendant is at least 18 years old, is guilty of a federal offense for which a sentence of death is provided, the Defendant had at least one of the mental states listed in 18 U.S.C. § 3591(a)(2)(A)-(D), and at least one of sixteen statutory aggravating factors exists beyond a reasonable doubt. 18 U.S.C. § 3592(c).[7] The term "aggravating factor" in the FDPA refers to the statutory and non-statutory aggravating factors listed in section 3592. If the Government meets the requirements in section 3591 to seek the death penalty, it may then make its case at a penalty phase that death is the appropriate sentence.[8]

---

[7] The FDPA lists sixteen aggravating factors which are generally referred to as the statutory aggravating factors and then provides that the jury "may consider whether any other aggravating factor for which notice has been given exists." 18 U.S.C. § 3592(c).

[8] At the penalty phase, the Government must prove that the Defendant: (A) intentionally killed the victim; (B) intentionally inflicted serious bodily injury that resulted in the death of the victim; (C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or (D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act[.]

The FDPA also requires the Government to file a notice of its intent to seek the death penalty with the court and serve the notice on the defendant at "a reasonable time before trial." 18 U.S.C. § 3593(a)(1).[9] *See Lankford v. Idaho*, 500 U.S. 110, 127 (1991) (due process requires that a defendant receive adequate notice that a judge might impose the death penalty). Section 3593(a) requires that the notice of intent state the Government's intention to seek the death penalty and set forth the aggravating factor or factors that the government will rely upon to justifying a sentence of death.[10] Section 3593(a) also provides that a court "may permit the attorney for the government to amend the [death] notice upon a showing of good cause." 18 U.S.C. § 3593(a). At bottom, the purpose of the § 3593(a) notice requirement is ensure that a capital defendant "has adequate time to prepare for a death defense." *United States v. Wilk*, 452 F.3d 1208, 1223 (11th Cir. 2006).

   A.   *The Government's Motion to Amend*

In this case, the Government has moved to amend two parts of the death notice. First, it seeks to include the phrase "or attempted to kill" in the description under the "Multiple Killings or Attempted Killings" heading relating to the statutory aggravating factor in 18 U.S.C. § 3592(c)(16). Second, it seeks to strike the "Contemporaneous Convictions" non-statutory

---

[9] The FDPA provides that a death-penalty notice be given "a reasonable time before the trial or before acceptance by the court of a plea of guilty," but does not define the amount of time that is sufficient notice or what the appropriate remedy should be in the case of insufficient notice. (§ 3593(a)). *See United States v. Wilk*, 452 F.3d 1208, 1221 (noting that "Section 3593 is silent as to the remedy for such a Death Notice.").

[10] The Federal Death Penalty Act, 18 U.S.C. § 3593(a), provides in pertinent part: [I]f ... the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified ..., the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice -

   (1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified ... and that the government will seek the sentence of death; and

   (2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

aggravating factor – that the "defendant faces contemporaneous convictions for multiple attempted murders and other serious acts of violence" – under 18 U.S.C. § 3593(a)(2). (Doc. 224). The latter proposed amendment is uncontested, and thus the court addresses it first.

     *1.*     *The Government's Request to Strike the Reference to "Contemporaneous Convictions"*

The Government moves to strike the "Contemporaneous Convictions" aggravating circumstance as inapplicable to this case, because the United States does not allege that Merriweather has any contemporaneous convictions. (Doc. 224 at 2). The Defendant does not object to this motion. (Doc. 262 at 1). The court agrees with the parties that the death notice should be amended to remove this inapplicable aggravating circumstance. Accordingly, the court concludes that the Government's motion to amend the notice to strike the "Contemporaneous Convictions" non-statutory aggravating factor should be granted.

     *2.*     *The Government's Request to Add the Language "or Attempted to Kill"*

There is no agreement between the parties as to an amendment to the death notice related to adding the language "or attempted to kill." Indeed, the defense objects to adding this proposed language to the notice of the aggravating circumstances under 18 U.S.C. § 3592(c)(16)). The Government requests the change because "although the heading of the fourth statutory aggravating factor alleged correctly reads "Multiple Killings or Attempted Killings," the sentence appearing directly below the heading does not contain similar language. The Government indicates this is due to a scrivener's error resulting in the phrase "or attempted to kill" being inadvertently omitted." (Doc. 224). Thus, if permitted, the amended notice of this statutory aggravating factor would read, "The defendant intentionally killed or *attempted to kill* more than one person in a single criminal episode. (18 U.S.C. § 3592(c)(16))." (emphasis added). The Government states that this amendment does not alter the substance of the notice, "but

merely ensures that the body of the alleged aggravating factor is consistent with the heading, which has already placed the defendant on notice." (Doc. 224 at 3).

The defense does not challenge the Government's assertion that the proposed amendment is non-substantive. Rather, the defense maintains that the Government's amended notice does not comply with the FDPA's reasonable notice[11] requirement and that the Government has failed to show good cause for failing to amend it earlier. (Doc. 262).

### B.     The Notice Requirement

In determining the threshold issue of good cause, the court first addresses whether the Government's proposed amendment is one for which notice is constitutionally or statutorily required. The court notes that the Government is not adding a new charge or previously undisclosed information about an aggravating circumstance. The "attempt" language can be found in the aggravating factor's heading in the notice of intent. The full language of the aggravating factor under section 3592 (c)(16) is in the Indictment's Notice of Special Findings section, and the multiple killings aggravating factor is listed, albeit with the missing language in the description.

The FDPA does not explicitly require more than notice "setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death." 18 U.S.C. § 3592(a)(2). Moreover, as the Eleventh Circuit has stated, while "capital defendants must be afforded a meaningful opportunity to defend against the State's penalty phase evidence, there is no extant constitutional right to advance notice of the evidence to prove such charges in a capital sentencing hearing." *United States v. LeCroy*, 441 F.3d 914, 929 (11th Cir. 2006), citing *Gray v. Netherland,* 518 U.S. 152, 181 (1996) (a capital

---

[11] The defense argues that the Government should not be permitted to amend the notice of intent because a drafting mistake made "roughly 66 months prior" to the motion to amend is not "good cause" under 18 U.S.C. § 3593(a). (Doc. 262).

9

defendant's due process right to notice of the charges in a death notice does not extend to the evidence that the state plans to use to prove the charges).

In a similar case, the Eleventh Circuit held that when the prosecution gives notice that it will seek death based on certain aggravating factors, the FDPA does not require the government to furnish additional evidence about those factors. *United States v. Battle,* 173 F.3d 1343 (11th Cir. 1999). In *Battle*, the Government moved to amend a death notice to supply additional evidence about the "future dangerousness" aggravating factor listed in the first notice. The Eleventh Circuit found that the Government did not have to show good cause to amend because the original notice informed the Defendant of the Government's intent to submit the aggravating factor – and nothing more was required. The court explained that when the Government seeks to amend a death notice "to add only specific evidence-and not new "factors," it does not need to show good cause; if anything, the Government is helping the defendant . . . by forewarning him of the evidence to be used against him." *Battle*, 173 F.3d at 1347. Numerous cases have used similar reasoning. *See LeCroy*, 441 F.3d at 929 (relying on *Battle* in holding that the "§ 3593 notice sufficiently apprised [the defendant] of all the aggravating factors relied upon by the government"); *United States v. Wilson*, 493 F. Supp. 2d 364, 373 (E.D.N.Y. 2006) (holding that defendants were not entitled to a bill of particulars when the notices of intent and of special findings in the indictment and discovery gave "ample notice" of the evidence the Government would rely on to show the future dangerousness aggravating factor); *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 471, 472-73 (E.D. Pa. 2001) (finding that the titles of the non-statutory aggravating factors of "Contemporaneous conviction for another killing" and "Contemporaneous conviction for a serious drug offense" were sufficient notice to the defendants of the evidence that will be introduced to support those factors: "In evaluating

whether due process is satisfied, the Death Penalty Notice must be considered in conjunction with the offenses as charged in the indictment, which can provide the requisite specificity to an otherwise insufficient notice").

After careful review, the court concludes that both the plain language of the FDPA and precedent in this Circuit support the court's conclusion that the proposed amendment is not statutorily or constitutionally required. Notice of factors is different from "notice of the specific evidence that will be used to support it." *United States v. Higgs*, 353 F.3d 281, 325 (4th Cir. 2003). In this case, without question, the Defendant has had sufficient notice that the Government may present evidence about attempted killings as a part of its proof of the "multiple killings" aggravating factor. The aggravating factors identified in the Notice of Special Findings, combined with the indictment, the subsequent discovery in the case, and the time that the defense will have to prepare its defense convince the court that the amendment is not required to give the defense sufficient notice. The Government understandably wishes to make a clear record by amending the description of multiple killings in the notice, but the law does not require the description to be amended for the Defendant to have sufficient notice of the factor itself.

A.  *Good cause under § 3593(a)*

Although the court concludes that the amendment is not required for sufficient notice, the court addresses, in the alternative, and out of an abundance of caution, whether the Government has shown good cause to amend the death notice. The FDPA provides that a death-penalty notice be given "a reasonable time before the trial or before acceptance by the court of a plea of guilty," but does not define the amount of time that is required for sufficient notice or what the appropriate remedy should be in the case of insufficient notice. 18 U.S.C. § 3593(a). *See Wilk*, 452 F.3d at 1221 (noting that "Section 3593 is silent as to the remedy for such a Death Notice.");

11

*United States v. McGriff*, 427 F. Supp. 2d 253, 261-62 (E.D.N.Y. 2006) (§ 3593 "affords no guidance as to how to assess reasonableness, nor does it address the remedy to be fashioned if reasonable notice is not given; moreover, there is no legislative history addressing those issues);.

The decisions in this area recognize the relationship between two of the FDPA's statutory requirements: "(i) a filing of the death notice a reasonable time before trial; and (ii) a showing of good cause to amend that notice." *United States v. Le*, 326 F. Supp. 2d 739 (E.D. Va. 2004) (denying motion to reconsider the striking of amended death notice when the government knew about the information that it wished to amend before the filing of the original notice). While the FDPA does not define the terms "reasonable time" or "good cause," the Eleventh Circuit has approved of a three factor test to evaluate good cause under the FDPA where: (1) the amended factors have a plausible connection to the facts, (2) there is no deliberate delay by Government, and (3) there is no prejudice to the defendant. *Battle,* 173 F.3d 1343, 47-48 (11th Cir. 1999), citing *United States v. Pretlow*, 770 F. Supp. 239, 242 (D.N.J. 1991). The court discusses these factors below.

    1.    *The Nature of the Aggravating Circumstances Alleged to Support the Death Penalty*

The Government's proposed amendment of the "multiple killings" aggravating circumstance relates to charges already in the Indictment. Moreover, the language alleging that Merriweather did "intentionally kill and attempt to kill more than one person in a single criminal episode" is in the Notice of Special Findings.[12] The fact that the amendment does not introduce any new aggravating factors weighs in favor of finding good cause. *See Le*, 326 F. Supp. 2d at 742 (determining that good cause not shown when proposed amended notice did not relate to the specific charged offenses or any previous criminal convictions). The proposed amendment here

---

[12] *See* Indictment, Notice of Special Findings (Doc. 1 (sealed) at 6).

12

to add attempted killings to the description of the multiple killings aggravating factor is undoubtedly connected to the underlying offense: Merriweather is accused of wounding two bank employees and killing two others.  For these reasons, the court concludes that the nature of the charges weighs in favor of permitting the amendment.

    2.    *Diligence*

The next factor, which considers the Government's diligence, also weighs in favor of allowing the amendment. This case is not one in which the Government has delayed in informing the Defendant about an aggravating factor. Again, the full description of the section 3592(c)(16) aggravating circumstance, including the phrase "attempt to kill," is in the indictment and in Notice of Special Findings. (Doc. 1 at 6 (sealed)). A decade ago, in a similar case, the Eastern District of Virginia used reasonable diligence as the appropriate standard of good cause, noting that courts employ the same definition when referring to a showing of "good cause" in the Federal Rules of Civil Procedure. *United States v. (Cuong Gia) Le*, 316 F. Supp. 2d 343 at 348-49 (E.D. Va. 2004) ("§ 3593(a) good cause must focus on the diligence of the government in uncovering the new information contained in the Amended Death Notice and the timing of when that information was obtained.") In *Le*, the court found that the government had not shown reasonable diligence because it was aware that the defendant was involved in a 1997 murder – the subject of the amended notice – long before filing the original death notice. (*Cuong Gia) Le*, 316 F. Supp. 2d at 349 (E.D. Va. 2004). In a later opinion in the same case, the district court elaborated that "[g]ood cause focuses on the government's diligence and, implicitly, on the government's good faith, in promptly discovering the information that is the substance of the amendment and then in promptly seeking the amendment." *Le*, 326 F. Supp. 2d at 741. In this case, the 2007 indictment notified the Defendant that the Government plans to rely upon the

"multiple persons" aggravating circumstance as a basis for the death penalty. The inclusion of the "multiple persons" aggravating circumstance at the start of the case further gives credibility that the Government's omission of the "attempt to kill" phrase from the death notice was inadvertent rather than deliberate.

### 3. Prejudice to the Defense

Finally, the court cannot discern any disadvantage to the Defendant by allowing the amendment. While lack of prejudice is not solely determinative of reasonable diligence, any resulting prejudice to the defendant is a corollary concern. *See Le*, 326 F. Supp. 2d at 742 (noting that "there is little practical difference between reading [§ 3593(a)'s good cause standard separately from prejudice] and reading the statute, as the government does, to find the prejudice to defendant factor within the "good cause" requirement. In either case, essentially the same factors—the government's diligence (and implicit good faith) and any unfair prejudice to defendant's right to an adequate opportunity to prepare for the sentencing phase of trial—are taken into account"). The court notes that the amendment here would be "wholly technical in nature" and unlike *Le*, would not change "the substantive notification to the defense about the aggravating factors to be alleged by the government." *United States v. Ayala-Lopez*, 457 F.3d 107, 109 (1st Cir. 2006) (finding good cause when amendment only corrected cross-references to renumbered counts of indictment and contained the same aggravating factors as in the first amended notice).

In addition to the subject of the amendment, the timeliness of the notice is a pivotal factor in determining prejudice. The timeliness of the notice is judged by whether, in the totality of the circumstances, allowing the Government to amend the death notice will give the defense an objectively reasonable time to prepare its case for trial. In *Wilk,* the Eleventh Circuit held that a

court should consider the interval between the filing of the notice of intent to seek the death penalty and the actual trial date to determine if the notice was filed within a reasonable time before trial. *Wilk*, 452 F.3d at 1222-23; *accord McGriff*, 427 F. Supp. 2d at 269 (considering the nature of the charges, the nature of the aggravating factors, and the time remaining before a firm trial date to decide whether § 3593(a)'s notice requirement had been violated); *United States v. Pepin*, 367 F. Supp. 2d 315, 318-19 (E.D.N.Y. 2005) (appointment of capital counsel and funds for experts for capital sentencing show "all parties knew this was a likely death penalty case); *United States v. Ponder*, 347 F. Supp. 2d 256, 265 (E.D. Va. 2004) (fact that potential capital punishment was translucent since the outset" and prior to death penalty notice defendant was appointed additional counsel experienced in capital defense weighs in favor of reasonableness). Just as in *Wilk*, the parties in this case knew that this was a likely death penalty case." 452 F.3d at 1222. Two of Merriweather's attorneys, lead counsel Emory Anthony and Derrick Collins, represented him in the State of Alabama's death penalty prosecution months before the federal indictment and were preparing a defense before the Defendant was federally indicted. *See* Doc. 4 (sealed) at 3. All of Merriweather's counsel have known of the aggravating factors in this case since the 2007 indictment.

### III. CONCLUSION

After reviewing of the record, the parties' pleadings and arguments, and the factors discussed above, the court concludes that the Defendant has had reasonable notice of the aggravating factors upon which the Government intends to rely to justify a death sentence. Therefore, the Government's motion to amend to strike the "Contemporaneous Convictions" non-statutory aggravating factor under 18 U.S.C. § 3593(a)(2) and to add "attempted killings" to

the description of the "multiple killings" aggravating factor under 3592(c)(16), is due to be granted. A separate order in accordance with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this April 14, 2014.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE