FILED

2014 Jun-25  PM 04:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **v.** | } | **Case No. 2:07-cr-00243-RDP-JEO** |
| | } | |
| **WILLIAM MERRIWEATHER, JR.,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Presently before the court are five pretrial criminal motions filed by Defendant William Merriweather contending that the intent and aggravating factors identified in the Government's Notice of Intent to Seek the Death Penalty fail to meet constitutional and statutory requirements. Specifically, Defendant moves to strike the Notice of Intent to Seek the Death Penalty because he alleges that: (1) it includes four separate theories of intent without specifying which mental state Government will rely upon at trial (Doc. 232)[1]; (2) the Government's allegation of future dangerousness is unconstitutionally speculative and arbitrary (Doc. 233)[2]; 3) the future dangerousness non-statutory aggravating factor is unconstitutionally vague, confusing to the jury, and duplicative (Doc. 234)[3]; and (4) the non-statutory aggravating factor of victim impact

---

[1] Defendant's Motion to Dismiss or Strike the Four Mental State Gateway Factors, and Request for a Hearing (Doc. 232). The document numbers refer to the corresponding numbers assigned by the court's Electronic Filing System (ECF).

[2] Defendant's Motion to Preclude the Use of the Non-Statutory Aggravating Factor of Future Dangerousness as It Is So Unreliable, Speculative, Arbitrary and Inaccurate as to Render It Unconstitutional on Its Face and as Applied to Defendant, and Request for a Hearing (Doc. 233).

[3] Defendant's Motion to Dismiss and Strike the Future Dangerousness Non-Statutory Aggravating Factor and to Exclude Evidence in Support Thereof, and Request a Hearing (Doc. 234).

is overly broad and vague (Doc. 240).[4]  Defendant also requests that the court order the Government to provide additional information about the proposed aggravating factors of future dangerousness and victim impact aggravating factor.  (Doc. 237).[5]  The Government opposes Defendant's motions and responds that the Notice of Intent to Seek the Death Penalty and the proffered aggravating factors are not constitutionally or statutorily defective. *See* Government's Response to Defendant's Motion to Dismiss and Strike Victim Impact Information, or, alternatively, to Limit Such Information to the Penalty Phase (Doc. 377, in response to Doc. 240).

The court has reviewed the indictment, the notice of intent, and the parties' submissions. For the reasons stated below, Defendant's motions Docs. 232, 233, 234, and 240 are due to be denied. The court defers ruling on the Defendant's Motion to Direct Government Disclosure of Evidence it Intends to Rely (Doc. 237) until after the parties have had an opportunity to exchange discovery.

## I.   BACKGROUND

The court incorporates by reference its prior rulings that set forth the case's procedural history,[6] and will only reference those case events that are particularly relevant to the particular motions currently before the court.

---

[4] Defendant's Motion to Dismiss and Strike the Non-statutory Aggravating Factor of Victim Impact, or, in the Alternative, to Limit Victim Impact Evidence at the Penalty Phase of the Trial, and Request for a Hearing Motion to Strike the Revised Notice of Intent to Seek the Death Penalty (Doc. 240).

[5] Motion and Memorandum of Law in Support of Defendant William Merriweather's Motion to Direct Government Disclosure of Evidence It Intends to Rely Upon to Establish Future Danger and Victim Impact Aggravating Factors (Doc. 237).

[6] See Docs. 299 and 300, Memorandum Opinion and Order on Government's Motion For Mental Examination Pursuant To Rule 12.2(c)(1)(B) By Government's Expert (Doc. 255) and Docs. 336 and 337, Memorandum Opinion and Order on Government's Notice of Intent to Seek the Death Penalty.

Merriweather is charged by indictment with the following: Count One - armed bank robbery by force or violence resulting in death in violation of 18 U.S.C. §§ 2113(a), (d) and (e); Count Two - armed robbery with forced accompaniment in violation of 18 U.S.C. § 2113(a) and (e); Count Three - using or carrying a firearm "during and in relation to [a] crime of violence" in violation of 18 U.S.C. § 924(c)(l)(A); Count Four - violation of 18 U.S.C. §§ 924(c) and (j) by using or carrying a firearm during and in relation to a crime of violence resulting in the death of Eva Hudson; and Count Five - violation of 18 U.S.C. §§ 924(c) and (j) by using or carrying a firearm during and in relation to a crime of violence resulting in the death of Sheila Prevo.

The Indictment contained a Notice of Special Findings alleging that Merriweather possessed the four mens rea factors described in 18 U.S.C. § 3591(a)(2)[7] (Doc. 1 at 5-6) and had committed four of the sixteen aggravating factors set forth in 18 U.S.C. § 3592(c).[8] (Doc. 1 at 5-6).

Based upon the charges in Counts One, Four, and Five of the indictment, the Government filed a Notice of Intent to Seek the Death Penalty against Merriweather. (Doc. 29 at 1-2). The Government's Notice of Intent set out the four statutory intent factors listed in 18 U.S.C. § 3591(a)(2) as well as four statutory aggravating factors under 18 U.S.C. § 3592(c) which were found by the grand jury in the Notice of Special Findings. (Doc. 29 at 2-4). Additionally, the

---

[7] The grand jury found that following intent elements existed under 18 U.S.C. § 3591(a)(2)A-(D): 1) Defendant intentionally killed Eva Lovelady Hudson and Sheila McWaine Prevo (§ 359l(a)(2)(A)); 2) Defendant intentionally inflicted serious bodily injury upon the victims § 359l(a)(2)(B); 3) Defendant intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person other than a participant in the offense and resulting in the deaths of the victims; and 4) Defendant intentionally and specifically engage in an act of violence, knowing that the act created a grave risk of death to a person, other than a participant in the offense showing a reckless disregard for human life (§ 3591(a)(2)(D)). (Doc. 1 at 5-6).

[8] The grand jury found the following statutory aggravating factors: 1) Defendant knowingly created grave risk of death to additional persons during the offenses (§ 3592(c)(5)); 2) the offense was committed for pecuniary gain (§ 3592(c)(8)); 3) Defendant committed the offenses after substantial planning and premeditation to cause the death of a person (§ 3592(c)(9)); and 4) Defendant intentionally killed more than one person in a single criminal episode (§ 3592(c)(16)). (Doc. 1 at 5-6).

Government's Notice identified the non-statutory aggravating factors of future dangerousness and victim impact evidence that it plans to rely upon to support a death sentence.[9] *See* 18 U.S.C. § 3593(a)(2). (Doc. 29 at 5-6). The Government alleged that the future dangerousness aggravating factor applied because "the defendant has engaged in a continuing pattern of violence" and because Defendant is an escape risk. (Doc. 29 at 5-6).[10] To support the victim impact evidence factor, the Government plans to present evidence about the victims' characteristics and the offenses' impact on the victims' families and colleagues. (Doc. 29 at 6-7).

## II.   DISCUSSION

### A.   OVERVIEW OF SENTENCING UNDER THE FEDERAL DEATH PENALTY ACT

The Federal Death Penalty Act of 1994 ("FDPA"), 18 U.S.C. §§ 3591-3598, establishes the procedures for imposing the death penalty for certain federal offenses. Before a trial under the FDPA, the Government must serve a defendant with a notice of its intent to seek the death penalty, listing the statutory and non-statutory aggravating factors that it intends to prove if the

---

[9] The Government has withdrawn a third non-statutory aggravating factor, contemporaneous convictions, as inapplicable to the case (*see* Doc. 224 (Government's Motion to Amend) and Doc. 337 (Order granting motion)).

[10] The Government's Notice of Intent (Doc. 29 at 5-6) alleged the following non-statutory aggravating factors:

Future Dangerousness of the Defendant

The defendant represents a continuing danger to the lives and safety of other persons. The defendant is likely to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others, as evidenced by, at least, one or more of the following:

(a) Continuing Pattern of Violence

The defendant has engaged in a continuing pattern of violence, attempted violence, and threatened violence, including, but not limited to, the crimes alleged against the defendant in the Indictment. The defendant has also engaged in a continuing pattern of violence since being incarcerated for the crimes charged in the Indictment, including, but not limited to, physical assaults and attacks on another inmate and prison guard.

(b) Escape Risk

The defendant constitutes an escape risk and has demonstrated both the ability and intent to escape. This is evidenced by the fact that on at least one occasion the defendant attempted to escape from custody.

defendant is convicted. 18 U.S.C. § 3593(a). The Government must also allege in the indictment at least one threshold (or "gateway") intent factor enumerated by Congress under 18 U.S.C. § 3591(a)(2)(A)-(D).[11]

If a defendant is convicted of a qualifying offense for which a sentence of death is provided, a sentencing hearing will be conducted before a jury (or, if the defendant requests and the Government agrees, it may be conducted before the court.) 18 U.S.C. § 3593(b).  A defendant becomes eligible for the death penalty only if the jury finds unanimously and beyond a reasonable doubt that 1) the defendant was 18 years of age or older at the time of the offense under 18 U.S.C. § 3591(a); 2) that the defendant acted with at least one of the statutorily-required intent under 18 U.S.C. § 3591(a)(2), and 3) that at least one of sixteen statutory "aggravating" factors under 18 U.S.C.A. § 3592(c) exists. This determination is commonly referred to as the "eligibility" stage of the FDPA process. *See Jones v. United States*, 527 U.S. 373, 376-77 (1999).

If the jury makes those threshold eligibility findings, it then proceeds to the selection stage during which it decides the appropriate sentence by determining the existence of any non-statutory aggravating factors submitted to it for consideration under 18 U.S.C. § 3592(c), as well as any mitigating factors under 18 U.S.C. § 3592(a). The jury "consider[s] whether all the

---

[11] Under 18 U.S.C. § 3591(a)(2), if a defendant has been convicted of an offense for which a sentence of death is provided, the Government must prove that the defendant, with one of the following mental states,

(A) intentionally killed the victim;

(B) intentionally inflicted serious bodily injury that resulted in the death of the victim;

(C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or

(D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act[.]

aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death" and then decides whether a defendant should be sentenced to death, to life imprisonment without possibility of release, or some other lesser sentence. 18 U.S.C. § 3593 (d), (e).[12] A jury's recommendation of a sentence of death or life imprisonment without possibility of release is binding on the sentencing judge. 18 U.S.C. § 3594.

> B.    MOTION TO STRIKE THE FOUR GATEWAY MENTAL STATE FACTORS (DOC. 232)

Merriweather moves to strike the gateway intent factors in the Notice of Intent to Seek the Death Penalty. First, he argues that the FDPA's gateway intent factors fail to narrow the class of death-eligible defendants as required by the Constitution. (Doc. 232 at 2). *See Zant v. Stephens*, 462 U.S. 862, 877 (1983) (a capital sentencing scheme must "genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder."). Defendant further asks the court to force the Government to choose one of the mental states and dismiss the other three because the aggravating factors mirror elements of the gateway intent factors. (Doc. 232 at 2). Finally, the Defendant argues that the Government's alleging all four factors denies him reasonable notice of the elements against which he must defend. (Doc. 232 at 8). The court discusses these contentions below.

> 1.    *The FDPA Intent Factors' Narrowing Function*

Defendant's first argument is that the gateway intent factors in § 3591(a) must be struck from the Notice of Intent because they are cumulative, fail to narrow the class of defendants who

---

[12] 18 U.S.C. § 3593(e) states, "[T]he jury ... shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death."

are eligible for the death penalty generally, and are duplicative of the charged aggravating factors. (Doc. 232 at 8). In this case, the government included all four of the gateway intent factors in the indictment. The Constitution requires that a capital sentencing scheme perform "a narrowing function with respect to the class of persons eligible for the death penalty and must also ensure that capital sentencing decisions rest upon an individualized inquiry." *Jones*, 527 U.S. at 381. A death penalty statute such as the FDPA is constitutional only if it "genuinely narrows the class of persons eligible for the death penalty and reasonably justifies the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *United States v. Chandler*, 996 F.2d 1073, 1092 (11th Cir. 1993) (citing *Lowenfield v. Phelps,* 484 U.S. 231, 244 (1988)).

Defendant's narrowing function argument is one that numerous federal courts have considered and resolved. Without question, the offense elements and the intent factors in 18 U.S.C. § 3591(a)(2)(A)-(D) serve to narrow defendants' eligibility for the death penalty. In *United States v. McCullah*, 76 F.3d 1087, 1108 (10th Cir. 1996) the Tenth Circuit analyzed a similar argument in a federal death penalty prosecution under 21 U.S.C. § 848. The Tenth Circuit found that the requirement that the jury must convict the defendant of a drug-related homicide committed with a firearm and find the existence of at least one threshold intent factor for a defendant to be eligible for the death penalty separated the case from the universe of all murder cases. The narrowing function in the federal death penalty scheme, the Tenth Circuit noted, occurs through an offense's statutory definition, not simply by the jury finding an aggravating factor. *McCullah*, 76 F.3d at 1108 ("the federal statute narrows the class of death-eligible defendants by restricting the possibility of capital punishment to certain situations under 21 U.S.C. § 848(e)(1)"). Moreover, as another federal court has explained, "even if this scheme is

not sufficient on its own, the additional narrowing accomplished by the requirement that the sentencing jury find at least one statutory aggravating factor before it may consider recommending the death penalty, 18 U.S.C. § 3593(e)(2), is sufficient to satisfy constitutional concerns." *United States v. Cheever*, 423 F. Supp. 2d 1181, 1198 (D. Kan. 2006) (finding that the charged offenses—the use of a firearm during a drug trafficking crime under 18 U.S.C. § 924(c)(1) and homicide of a witness under 18 U.S.C. § 1512(a)(1)(C)—were "sufficient to accomplish the narrowing function required by the Constitution."). *Accord United States v. Montgomery*, 2:11-CR-20044-JPM-1, 2014 WL 1347156, at *18 (W.D. Tenn. Mar. 19, 2014) (noting that Second, Fourth, Fifth, Sixth, Eighth, and Eleventh Circuits have held that "[n]on-statutory aggravating factors are relevant considerations in the sentence *selection* decision, but do not, in themselves, determine whether a defendant is 'eligible' to be considered for the death sentence"); *United States v. Le*, 327 F. Supp. 2d 601, 608-09 (E.D. Va. 2004) ("assuming, *arguendo,* that the intent requirement does not itself perform a narrowing function, the FDPA nonetheless accomplishes the constitutionally-mandated narrowing task by requiring that the jury find beyond a reasonable doubt the existence of at least one statutory aggravating factor" ); *United States v. Cooper*, 91 F. Supp. 2d 90, 97 (D.D.C. 2000) ("Even if the statutory intent elements did not narrow the class of persons eligible to receive the death penalty, narrowing is nonetheless accomplished by the requirement that the jury find beyond a reasonable doubt the existence of at least one statutory aggravating factor."); *United States v. Kaczynski*, CR S-96-259 GEB GGH, 1997 WL 34626785 at *3 (E.D. Cal. Nov. 7, 1997) (noting that the "'gateway' factors narrow the category of persons eligible for the death penalty by identifying those individuals who possess the requisite mental culpability").

8

The Supreme Court considered a similar argument in *Lowenfield v. Phelps*, 484 U.S. 231, 243 (1988), in which a Louisiana defendant was convicted of capital murder and found eligible for the death penalty because he had the specific intent to kill or inflict great bodily harm upon more than one person. The only aggravating factor found by the jury—that the defendant "knowingly created a risk of death or great bodily harm to more than one person"—was thus also an element of the capital offense. *Id.* Although "the aggravating circumstance duplicated one of the elements of the crime," the Supreme Court held that the constitutionally required narrowing function for death-eligibility was performed at the guilt stage, and "so the fact that the aggravating circumstance duplicated one of the elements of the crime does not make [the] sentence constitutionally infirm." *Id.* at 246. Similarly, the FDPA narrows the class of defendants eligible for the death penalty to certain crimes and then further narrows death-eligibility through the four "gateway" intent factors. The FDPA's capital scheme thus "easily passes muster under *Lowenfield.*" *United States v. Nguyen*, 928 F. Supp. 1525, 1545 (D. Kan. 1996) (citations omitted). *Accord United States v. Lawrence*, 735 F.3d 385, 418 (6th Cir. 2013) ("The FDPA narrows the class of defendants eligible for the death penalty by requiring the jury to find that the defendant had the requisite intent under 18 U.S.C. § 3591 and at least one statutory aggravating factor under 18 U.S.C. § 3592(c)."); *United States v. Higgs*, 353 F.3d 281, 294 (4th Cir. 2003) ("Once the jury finds the requisite intent and statutory aggravating factors, the crime is death-eligible."); *United States v. Webster*, 162 F.3d 308, 355 (5th Cir. 1998) ("Section § 3591(a) codifies the command in *Enmund* and *Tison* to limit the imposition of the death penalty to those murderers who both undertake felony participation and demonstrate at least reckless indifference to human life. Satisfaction of these elements only begins the death penalty inquiry; it does not and cannot establish death penalty eligibility by itself.") (internal citations omitted).

9

Consistent with these authorities, the court finds that the FDPA's requirement that the jury find at least one intent element and one statutory aggravating factor before considering any non-statutory factor (*see* 18 U.S.C. § 3593(d)) sufficiently narrows the class of defendants eligible for the death penalty. In this case, Defendant is charged under two statutes which carry a potential death sentence: 18 U.S.C. §§ 2113 and 18 U.S.C. § 924. (Doc. 1). The elements of these offenses distinguish Defendant's crimes from all murders.

Federal courts have also addressed and rejected Defendant's argument that the repetition of intent factors as aggravating factors is unconstitutionally duplicative. Defendant acknowledges these cases in his motion to strike the gateway intent factors (Doc. 232 at 4), citing *United States v. Cooper*, 91 F. Supp. 2d 90, 110 (D.C.C. 2000) (holding that the FDPA's "intent elements are not aggravating factors to be weighed against mitigating factors. If the jury finds one or all four of the factors, there is no risk of skewing because the jury finds intent, and then starts with a clean slate in evaluating separate aggravating factors."). Nevertheless, Defendant argues that although sentencing juries are instructed to consider aggravating factors anew and separately from the gateway intent factors, it is unrealistic to presume that jurors, having heard evidence about the intent factors, can realistically ignore them in determining the appropriate sentence. (Doc. 232 at 4). But that is exactly what the law presumes – that jurors will follow the law as instructed by the court. Therefore, the court will not strike the intent factors based upon a presumption that jurors will violate the law. *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"). *See also U.S. v. Cheever*, 423 F. Supp. 2d 1181, 1200 (D. Kansas 2006) ("Our entire system of justice is premised on the idea that jurors can and will follow instructions."). The court will also instruct the jurors at Merriweather's trial to not consider any evidence other than what is

10

appropriately before them at sentencing. *United States v. Solomon*, 513 F. Supp. 2d 520, 539 (W.D. Pa. 2007) (noting the court's "gatekeeper" role in the FDPA to review evidence that the prosecution intends to offer in support of its aggravating factors); *United States v. Johnson*, 915 F. Supp. 2d 958, 989 (N.D. Iowa 2013) (same).

      C.    MOTIONS TO STRIKE AND PRECLUDE THE FUTURE DANGEROUSNESS AGGRAVATING FACTOR FROM EVIDENCE (DOCS. 233 AND 234)

Merriweather also moves the court to preclude the Government's future dangerousness evidence as arbitrary and unreliable (Doc. 233) and to strike the future dangerousness aggravating factor from the Notice of Intent. (Doc. 234). Because these motions involve the same aggravating factor, the court discusses them together.

      1.    *Motion to Preclude Future Dangerousness Aggravating Evidence (Doc. 233)*

The FDPA allows the Government to assert future dangerousness as a non-statutory aggravating circumstance. 18 U.S.C. § 3592(c) ("The jury, or if there is no jury, the court, may consider whether any other aggravating factor for which notice has been given exists."). Defendant challenges the constitutionality of the future dangerousness factor as so unreliable, speculative, arbitrary and inaccurate that it is unconstitutional, both on its face and as applied. (Doc. 233 at 2). As Defendant acknowledges, the Supreme Court has long settled the legitimacy of future dangerousness as an appropriate aggravating factor in capital cases. *Simmons v. South Carolina*, 512 U.S. 154, 162-63 (1994); *Tuilaepa v. California*, 512 U.S. 967, 979 (1994); *Barefoot v. Estelle*, 436 U.S. 880 (1983); *Jurek v. Texas*, 428 U.S. 262, 274-76 (1976) (noting that the criminal justice system bases decisions on future criminal behavior predictions from bail to parole). The Supreme Court has repeatedly rejected arguments that future dangerousness evidence is unconstitutionally arbitrary or unreliable. When evaluating Texas' future

dangerousness aggravating factor in *Jurek*, the Court observed that "[i]t is, of course, not easy to predict future behavior. The fact that such a determination is difficult, however, does not mean that it cannot be made." *Id*., at 274-76 (footnotes omitted). Even though predicting human behavior is uncertain, the Court acknowledged, the task that a capital sentencing jury "must perform in answering the statutory question in issue is [] basically no different from the task performed countless times each day throughout the American system of criminal justice." 428 U.S. at 276. The Court has also approved expert testimony about future dangerousness in *Barefoot v. Estelle,* 463 U.S. 880, 898 (1983). In *Barefoot*, the Court recognized that also some experts believe that future dangerousness predictions are unreliable and inaccurate, the Court was "not persuaded that such testimony is almost entirely unreliable and that the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Id.* at 899.

Merriweather argues that new research challenges the underlying premises of the Supreme Court's prior decisions. (Doc. 233 at 5). This court, however, is bound by the Court's precedent established in *Barefoot*, *Jurek,* and the related decisions cited above. Numerous federal courts have likewise rejected defendants' requests to strike future dangerousness based on the same or similar research that Merriweather presents. *See United States v. Coonce*, 10-3029-01-CR-S-GAF, 2014 WL 1018081 at *4 (W.D. Mo. Mar. 14, 2014) ("To the extent that studies *may* show that determinations of future dangerousness are so unreliable as to be *per se* improper, such a ruling would need to come from the United States Supreme Court."); *United States v. Umana*, 707 F. Supp. 2d 621, 634 (W.D. N.C. 2010) (studies were "not legitimate grounds for a district court to question the continuing validity of otherwise mandatory precedent."); *United States v. Troya*, 06-80171-CR, 2008 WL 4327004 (S.D. Fla. Sept. 22, 2008) *report and recommendation*

*adopted sub nom. United States v. Varela*, 06-80171-CR, 2008 WL 5056984 (S.D. Fla. Nov. 21, 2008); *United States v. Natson*, 444 F. Supp. 2d 1296, 1307 (M.D. Ga. 2006) (declining to exclude expert testimony on the issue of future dangerousness as unreliable); *United States v. Cheever*, 423 F. Supp. 2d 1181, 1213 (D. Kan. 2006); *United States v. Concepcion Sablan*, 555 F.Supp.2d 1177 (D. Colo. 2006); *United States v. Rodriguez*, 2006 WL 487117, *5 (D.N.D. Feb. 28, 2006); *United States v. Bin Laden*, 126 F. Supp. 2d 290, 303-304 (S.D.N.Y. 2001); *United States v. Cooper*, 91 F.Supp.2d 90, 111-12 (D.D.C. 2000).

This court is empowered under 18 U.S.C. § 3593(c) to exclude evidence when its probative value is outweighed by the danger of creating unfair prejudice, or if it confuses the issues or misleads the jury. The court's review of any objections asserting that such evidence proffered by the Government is prejudicial in nature or lacks reliability of the evidence is sufficient to protect against such evidence being admitted at trial. If the future dangerousness evidence is ruled admissible, and Merriweather disputes whether the evidence actually proves the assertion, he may argue that point to the jury.

2.    *Motion to Strike the Future Dangerousness Aggravating Factor (Doc. 234)*

The Government's Notice of Intent alleges future dangerousness as a non-statutory aggravating factor. (Doc. 29 at 5-6). The Government proposes to introduce evidence that Defendant "has engaged in a continuing pattern of violence, attempted violence, and threatened violence, including, but not limited to, ... physical assaults and attacks on another inmate and prison guard." (Doc. 29 at 5). The Government also alleges that Defendant is an escape risk. In response, Defendant moves to strike the non-statutory aggravating factor of future dangerousness. (Doc. 234). In support of his motion, Defendant raises the following eleven arguments:

- the future dangerousness factor is unconstitutionally vague and ambiguous (Doc. 234 at 3-4);

- the probative value of the future dangerousness factor is outweighed by its prejudicial nature (Doc. 234 at 4-6);

- the factor constitutes impermissible double counting and duplication of the acts alleged in the statutory aggravating factors (Doc. 234 at 6);

- the future dangerousness aggravating factor constitutes impermissible double and triple counting and impermissible duplication of aggravating factors (Doc. 234 at 7-9);

- the factor is misleading because it is not limited to the prison setting (Doc. 234 at 9-10);

- Congress did not intend that future dangerousness be considered as a separate aggravating factor (Doc. 234 at 10-11);

- the frequency with which the Government asserts future dangerousness fails to show a rational basis (Doc. 234 at 11-12);

- the aggravating factor was not alleged in the indictment (Doc. 234 at 12-15);

- evidence offered in support of the aggravating factor must be screened to ensure that it meets heightened reliability standards under the Eighth Amendment and 18 U.S.C. 3593 (Doc. 234 at 15-16);

- the language used to state the future dangerousness aggravating circumstance, that the Defendant "is likely to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others..." is a lesser standard than the required one of "beyond a reasonable doubt." (Doc. 234 at 17-18); and

- the language used to state the future dangerousness aggravating circumstance alleging a "continuing pattern of violence," "low rehabilitative potential," or "lack of remorse" improperly allow the Government to violate the unanimity requirement and reasonable doubt requirement (Doc. 234 at 18-19).

The court addresses these arguments in turn.

a.       *The Constitutionality and Admissibility of Future Dangerousness Evidence*

Defendant's first and second arguments challenging the constitutionality and admissibility of the future dangerousness aggravating factor are answered by the court's findings regarding Doc. 234. (Section C.1, supra). As discussed above, the Supreme Court has ruled that the Government is permitted to present future dangerousness evidence notwithstanding arguments that "expert testimony about future dangerousness is far too unreliable to be admissible." *Barefoot,* 463 U.S. at 898. The court is bound by that precedent. *Jaffree v. Wallace*, 705 F.2d 1526, 1532 (11th Cir. 1983)*, aff'd in part*, 466 U.S. 924 (1984) and *aff'd*, 472 U.S. 38 (1985) (federal district courts and circuit courts must adhere to the controlling decisions of the Supreme Court).

Defendant cites *United States v. Grande*, 353 F. Supp. 2d 623 (E.D. Va. 2005), to support his argument that such evidence is unreliable, but *Grande* is distinguishable from this case. In *Grande*, the Eastern District of Virginia approved of much of the evidence that the Government proposed to introduce to show future dangerousness, finding that it complied "with 18 U.S.C. § 3593(c), because it is sufficiently reliable and not more prejudicial than probative." 353 F. Supp. 2d at 639. The court in *Grande* struck the phrase "continued to conduct and influence MS-13 gang business" as vague and prejudicial because it did not necessarily allege dangerous or violent conduct. *Id*. at 639. Furthermore, the court stated that words "gang business" was confusing and misleading because it could include innocent conduct and the term of "conduct and influence" also may confuse the issues and mislead the jury. *Id*. Merriweather's case is quite different. Here, the Government alleges that Merriweather committed physical assaults and threatened others, which is relevant to whether he exhibits a pattern of violent behavior. The proposed supporting information here does not have the potential to include innocent conduct (as

it did in *Grande*) to support the future dangerousness factor. Therefore, the Court denies Defendant's motion to strike the non-statutory factor of future dangerousness on this ground.

            b.    *Double Counting of the Future Dangerousness Aggravating Factor*

Merriweather next argues that the future dangerousness aggravating factor impermissibly duplicates the underlying offenses and the other non-statutory aggravating factors. (Doc. 234 at 7). He further maintains that the Government's Notice alleges a "continuing pattern of violence [that]… exactly mirrors the charged crimes themselves and the catchall non-statutory aggravating factor." (Doc. 234 at 8).[13] The Supreme Court, however, has permitted, at least implicitly, the introduction of aggravating factors that duplicated elements of a federal capital offense in *Jones*, 527 U.S. at 398 ("We have never before held that aggravating factors could be duplicative so as to render them constitutionally invalid, nor have we passed on the "double counting" theory that the Tenth Circuit advanced in *McCullah*"). Moreover, the Court has explicitly approved of aggravating factors that duplicated elements of a state capital offense in *Lowenfield v. Phelps*, 484 U.S. 231 (1988). In *Lowenfield*, the Supreme Court reviewed a Louisiana capital case in which the sole aggravating factor found by the jury—"the offender knowingly created a risk of death or great bodily harm to more than one person"—was also an element of the substantive capital offense. *Id.* at 243. Upholding the death sentence, the Court stated that the narrowing process occurred at the guilt stage in Louisiana's capital scheme, so "the fact that the aggravating circumstance duplicated one of the elements of the crime does not make this sentence constitutionally infirm." *Id.* at 246.

---

[13] The Government does not allege the "catch-all" factor under 18 U.S.C. § 3592(c) in the Notice and has withdrawn its allegation of "contemporaneous convictions." Therefore, the court discusses only the remaining non-statutory aggravating factors of future dangerousness and victim impact. (Doc. 29 at 5-6).

Defendant cites *United States v. McCullah*, 76 F.3d 1087 (10th Cir. 1996), in support of his argument. In *McCullah*, the Tenth Circuit found that the non-statutory aggravating factor which alleged that the defendant acted with intent that the victim be killed was "necessarily subsum[ed]" by the statutory factor of grave risk of death, and thus that they were impermissibly duplicative. *Id*. at 1111. In contrast to the aggravating factors alleged in *McCullah*, the "continuing pattern of violence" element of future dangerousness alleged here is factually distinct from the offense elements and the statutory aggravating factors in this case. Indeed, the Government has alleged factors that "concern wholly different aspects of the defendant's criminal history and therefore do not run afoul of the bar on duplicative factors." *Hooks v. Ward*, 184 F.3d 1206, 1239 (10th Cir. 1999) (state aggravating circumstances of sexual predatory nature and violent propensity, independent of a prior violent felony conviction, supported the "continuing threat to society" factor). *Accord*, *United States v. Fell*, 531 F.3d 531 F.3d 197, 236 (2d Cir. 2008) ("Two factors are not duplicative merely because they are supported by the same evidence.") (citing Jones, 527 U.S. at 399); *Fields v. Gibson*, 277 F.3d 1203, 1218-19 (10th Cir. 2002) ("To determine whether aggravating factors are duplicative "[t]he applicable test 'is not whether certain evidence is relevant to both aggravators, but rather, whether one aggravating circumstance necessarily subsumes the other[s].' ") (citations omitted); *United States v. Montgomery*, 2:11-CR-20044-JPM-1, 2014 WL 1347156 (W.D. Tenn. Mar. 19, 2014). There is no bar in the Supreme Court's jurisprudence or in *McCullah* that warrants striking the future dangerousness factor in this case. *See Lowenfield v. Phelps,* 484 U.S. 231 at 246; *United States v. Chandler,* 996 F.2d 1073, 1092-93 (11th Cir.1993) ("As long as a death penalty statute narrows the class of persons subject to the death penalty at the guilt phase of trial, the fact that the jury

may find an aggravating factor that duplicates a finding made at the guilt phase does not render the capital statute unconstitutional.").

c.        *Limiting Future Dangerousness Factor to the Penal Setting*

Merriweather submits that the future dangerousness factor must be limited to whether he poses a future danger in prison because of the unlikelihood of parole if he is convicted of the charged offenses. (Doc. 234 at 9). The information in the Notice is largely limited to acts that Defendant has committed since being jailed for the indicted offenses. Although the Government has not indicated that it intends to present evidence about potential harm to general society, the Notice does reference "crimes charged in the Indictment," and hence evidence about danger to society could conceivably apply. The Supreme Court addressed this concern in *Simmons*, holding that "where a capital defendant's future dangerousness is at issue, and the only sentencing alternative to death available to the jury is life imprisonment without possibility of parole, due process requires that the jury be informed of the defendant's parole ineligibility." 512 U.S. at 164. *See also Shafer v. South Carolina*, 532 U.S. 36 (2001) (holding that when future dangerousness is at issue in capital sentencing proceeding, due process requires that jury must be informed that life sentence carries no possibility of parole). The Court in *Simmons* did not, however, limit the prosecution to presenting only evidence that a parole-ineligible defendant posed a future danger to others while imprisoned. *Id.* at 165 n. 5.[14]

_____

[14] Federal courts have adopted a variety of approaches in interpreting *Simmons*. *See, e.g.*, *United States v. Concepcion Sablan*, 555 F. Supp. 2d 1177, 1186 (D. Colo. 2006) (requiring the Government to evaluate future dangerousness in the context of life in a prison setting). Other courts reject claims to restrict proof of future dangerousness aggravating factor to prison-setting evidence. *See United States v. Fields*, 516 F.3d 923, 943 (10th Cir. Okla. 2008) ( "an explicit prison-setting limitation need not be included in a future-dangerousness aggravator " so long as "the jury is clearly informed that the Defendant would not be eligible for parole if a life sentence were imposed "); *United States v. Montgomery*, No. 2:11-CR-20044-JPM-1, 2014 WL 1347156, at *34 (W.D. Tenn. Mar. 19, 2014) (rejecting argument that the Government could not present evidence of Defendant's past out-of-prison conduct in support of his future dangerousness within a prison setting); *United States v. Williams*, No. 4:08-cr-00070, 2013 WL 1335599, at *31-32 (M.D. Pa. March 29, 2013) (same). Some courts have taken a slightly altered path in restricting future dangerousness evidence to that relevant to a prison setting but allowing the Government to

18

At this stage, the court has no details about what evidence that the Government intends to use to proffer to show future dangerousness and declines to strike the factor based on rank speculation that the Government may present impermissible evidence in support of it. Instead, if future dangerousness evidence is presented, the court will adhere to the Supreme Court's teachings in *Simmons* and *Shafer*, and instruct the jury that a sentence of life imprisonment without the possibility of parole will be imposed if they find that a sentence of death is not justified. *See United States v. Williams*, 4:08-CR-00070, 2013 WL 1335599, at *32 (M.D. Pa. Mar. 29, 2013) (holding that such an instruction "will eliminate any prejudice or confusion relating to the wording of the future dangerousness factor.").

> d.   *Future Dangerousness as a Separate Aggravating Factor*

Merriweather next argues that the future dangerousness factor is invalid because Congress clearly did not intend that evidence of future dangerousness be permitted beyond specific statutory aggravating factors regarding the defendant's past conduct. (Doc. 234 at 11). However, the FDPA provides in 18 U.S.C. § 3592(c) that "[t]he jury, or if there is no jury, the court, may consider whether *any other aggravating factor* for which notice has been given exists." (emphasis added).  If Congress intended that no past conduct should be considered aggravating except statutory aggravating factors, it would not have included a "catch-all" provision in the statute. Moreover, the Supreme Court has not so limited future dangerousness as an aggravating factor in capital sentencing schemes. *Simmons*, 512 U.S. at 162 (1994) (state's evidence in aggravation is not limited to evidence relating to statutory aggravating circumstances). This court finds no reason to preclude future dangerousness evidence on this

---

introduce evidence of out-of-prison conduct to show the potential for dangerousness while incarcerated. *See United States v. Llera Plaza*, 179 F. Supp. 2d 464, 487-88 (E.D. Pa. 2001) (court requested that the government limit its evidence to that which was relevant to life imprisonment but did not restrict the government from presenting out-of-prison conduct in support of the future dangerousness factor).

ground. *See, e.g.*, *United States v. Gooch*, No. 04-128-23, 2006 WL 3780781, at *27-28 (D.D.C. Dec. 20, 2006) ("allowing future dangerousness to stand alone as a nonstatutory aggravating factor, measured, in part, by criminal history, allows the jury to make a prediction based on 'all possible relevant information about the individual defendant whose fate it must determine.'") (quoting *Barefoot*, 463 U.S. at 897.

        e.     *The Frequency with which the Future Dangerousness Factor Is Raised*

Merriweather argues the future dangerousness aggravating factor is raised so frequently in federal capital cases that it has become meaningless in distinguishing cases that merit the death penalty. The Supreme Court addressed a similar argument about the non-statutory aggravating factor of victim impact in *Jones v. United States*. There, the Court explained, "[i]t might seem, then, that the factors ... apply to every eligible defendant and thus fall within the Eighth Amendment's proscription against overbroad factors. But that cannot be correct.... Even though the concepts of victim impact and victim vulnerability may well be relevant in every case, evidence of victim vulnerability and victim impact in a particular case is inherently individualized." *Jones,* 527 U.S. at 401. Similarly, in this case, the concept of future dangerousness may be frequently raised, but the evidence in Merriweather's case will be "inherently individualized." The fact that juries often reject future dangerousness, as Merriweather notes in his motion (Doc. 234 at 12), indicates that juries take care to find the factor only in cases that warrant it. *See United States v. Taveras*, 424 F. Supp. 2d 446, 465 (E.D.N.Y. 2006) *aff'd in part sub nom. United States v. Pepin*, 514 F.3d 193 (2d Cir. 2008) (defendant's physical abuse of a former adult girlfriend held admissible as relevant to a determination of future dangerousness, because "the chance of release-while slim-is present.").

The court therefore finds that the future dangerousness factor is not meaningless as it is "used to direct the jury to the individual circumstances of the case." *Jones*, 527 U.S. at 402. *See also*, *United States v. Corley,* 519 F.3d 716, 723 (7th Cir. 2008) ("There is widespread acceptance that evidence of future dangerousness is indeed a relevant consideration in the sentencing process."); *United States v. Montgomery*, 2014 WL 1347156 at *32 (rejecting congressional intent challenge to future dangerousness factor in part because of provision in 18 U.S.C. § 3592(c) that "[t]he jury, or if there is no jury, the court, may consider whether any other aggravating factor for which notice has been given exists."); *United States v. Williams*, No. 4:08-cr-00070, 2013 WL 1335599 at *31 (M.D. Pa. March 29, 2013) (declining to strike a future-dangerousness factor on the basis of Congressional intent).

f.      *Pre-Screening Future Dangerousness Evidence*

Defendant invites the court to prescreen the evidence that the Government intends to use to prove future dangerousness and for an evidentiary hearing to review that evidence. (Doc. 234 at 15-16). The court declines to do so at this stage of the case. The Government is not required under the FDPA to produce specific proof of its aggravating factors in the indictment or in the Notice of Intent. As discussed previously, § 3593(a) does not require elaborate evidentiary detail about aggravating factors – the Notice of Intent must simply inform the defendant that the Government intends to seek the death penalty and "set[] forth the aggravating factor or factors that the government ... proposes to prove as justifying a sentence of death." 18 U.S.C. § 3593(a). *See United States v. LeCroy*, 441 F.3d 914, 929 (11th Cir. 2006) ("[A]lthough there is a right to advance notice of the charges, there is no extant constitutional right to advance notice of the evidence to prove such charges in a capital sentencing hearing.") (citing *Gray v. Netherland*, 518 U.S. 152, 166-70 (1996)); *United States v. Battle*, 173 F.3d 1343, 1347 (11th Cir. 1999) ("The

21

Government is not required to provide specific evidence in its notice of intent [to seek the death penalty]"); *United States v. Chandler,* 996 F.2d 1073, 1089 (11th Cir. 1993) (describing a comparable notice provision in 21 U.S.C. § 848(h) as requiring only that the government "provide the defendant with a list setting forth each aggravating factor that the government will attempt to prove as a basis for the imposition of the death penalty").

The Government bases its allegation that Merriweather poses a future danger on his conduct while detained for trial, including engaging in assaultive conduct and making threats while in jail. (Doc. 29, at 5-6). This information, particularly as it involves Merriweather's personal conduct, gives the defense statutorily adequate notice of future dangerousness. The court is aware that Defendant may wish to have more detail about the specific evidence that the Government will use to prove its allegations at trial, however, the court finds that a separate evidentiary hearing is unnecessary to accomplish this. If this case proceeds to sentencing and Defendant does not have sufficient information after discovery about the evidence that the Government will present, the court will further address the issue upon Defendant's renewed request to do so.

g.    *The Future Dangerousness Aggravating Factor—Was it Alleged in the Indictment and Does it Violate the Presumption of Innocence.*

Merriweather contends that the allegation of future dangerousness must also be stricken because it was not in the indictment. He claims that because this aggravating factor was not included, the indictment violates his presumption of innocence and his rights under the Fifth and Sixth Amendments. The Eleventh Circuit has rejected arguments that non-statutory aggravating factors such as future dangerousness must be alleged in the indictment. In *United States v. Brown*, the court stated:

> The non-statutory aggravating factors, although relevant to determining whether a jury decides to impose the death penalty, do not make a defendant statutorily eligible for any sentence that could not be otherwise imposed in their absence. They are neither sufficient nor necessary under the FDPA for a sentence of death. This rule comports with recent Supreme Court precedent because a non-statutory aggravating factor does not "increase the penalty for a crime beyond the prescribed statutory maximum," *see Apprendi*, 530 U.S. at 490, nor does it somehow allow the imposition of a more severe sentence than could have been imposed without it. *See Blakely v. Washington*, 542 U.S. 296, 303-04 (2004). Thus, a non-statutory aggravating factor is not one of those "facts legally essential to the punishment" that must be included within the indictment.

*Brown*, 441 F.3d 1330, 1368 (11th Cir. 2006) (some citations and quotations omitted). The clear weight of authority in federal decisions supports the conclusion that non-statutory aggravating factors need not be submitted to the grand jury or charged in the indictment. *United States v. Fell*, 531 F.3d 197, 237-38 (2d Cir. 2008); *United States v. Mitchell*, 502 F.3d 931, 979 (9th Cir. 2007); *United States v. Purkey*, 428 F.3d 738, 749-50 (8th Cir. 2005); *United States v. Bourgeois*, 423 F.3d 501, 507-08 (5th Cir. 2005); *United States v. Higgs*, 353 F.3d 281, 298-99 (4th Cir. 2003); *LeCroy,* 441 F.3d at 920; *United States v. Allen,* 406 F.3d 940, 949 (8th Cir. 2005); *United States v. Robinson*, 367 F.3d 278, 290 (5th Cir. 2004); *United States v. Sampson,* 486 F.3d 13, 20-23 (1st Cir. 2007); *Troya*, 2008 WL 4327004, at *5.

The cases in Merriweather's motion wholly fail to cast doubt on the correctness or validity of these precedents. For example, the proposition in a case that Merriweather cites, *United States v. Green*, 372 F. Supp. 2d 168 (D. Mass. 2005), that the grand jury must screen the future dangerousness aggravating factor – was never tested on appeal. *See In re U.S.* (*United States v. Green*), 426 F.3d 1 (1st Cir. 2005) (granting mandamus on issue of racial composition of inaccurate and out-of-date jury wheel). Another case that Merriweather cites, *United States v. Gonzalez*, No. 3:02CR7 (JBA), 2004 WL 1920492, (D. Conn. Aug. 17, 2004), is inapplicable here. The court in *Gonzalez* was persuaded to strike the future dangerousness factor because the

presumption of innocence might have been eroded when a jury, having "found the defendant guilty of capital murder, [was] then charged with determining whether the Government has proved beyond a reasonable doubt that Gonzalez committed four other murders." 2004 WL 1920492, *2-3. The issue that was key to the holding in *Gonzalez*—the Government's proffer of evidence about four potentially inflammatory and unadjudicated murders—is not present in this case. The conduct the Government alleges in this case—risk of escape and threatening and assaulting fellow inmates and prison staff—is relevant to show future dangerousness in prison. *See United States v. Sampson*, 335 F. Supp. 2d 166, 226 (D. Mass. 2004) (evidence of escapes and threats to prison employees introduced in FDPA case "are also relevant because they show a willingness and ability to break the rules of a prison"; jury ultimately declined to find the future dangerousness factor).

> h.   *Congress Did Not Intend that Future Dangerousness to Be Considered as a Separate Aggravating Factor.*

Merriweather argues that Congress did not intend that future dangerousness be used to support the imposition of the death penalty because it did not include future dangerousness as one of the FDPA's sixteen enumerated aggravating factors. (Doc. 234 at 11). He asserts that Congress was aware of the capital sentencing schemes throughout the country that expressly included a future dangerousness aggravating factor, and by omitting it in the FDPA, Congress meant to exclude it. This argument is refuted by the FDPA's plain text that permits the sentencer to consider "any other aggravating factor for which notice has been given exists" including "factors not specifically enumerated in the statute." 18 U.S.C. § 3592(c). *See United States v. Williams*, 4:08-CR-00070, 2013 WL 1335599 (M.D. Pa. Mar. 29, 2013), quoting *United States v. Barnes,* 532 F.Supp.2d 625, 634 (S.D.N.Y.2008); *United States v. Hammer,* No. 96-CR-239, 2011 WL 6020577, at *5 (M.D. Pa. Dec.1, 2011). As the Middle District of Pennsylvania

recently noted in *Williams*, if Congress intended for future dangerousness to be excluded under the FDPA, "it would have limited the language of § 3592(c) to so state." 2013 WL 1335599 at \*31 (quoting *Concepcion Sablan,* 555 F. Supp. 2d at 1180). Merriweather's argument is unpersuasive that the future dangerousness factor is contrary to congressional intent.[15]

i.   *Language that the Defendant "Is Likely to Commit Criminal Acts of Violence in the Future."*

Defendant argues that that the language used to state the future dangerousness aggravating circumstance—"likely to commit criminal acts of violence in the future"—lessens the Government's burden of proof below that what is required by due process and statute, namely, § 3593(c)'s requirement that aggravating circumstances be proven beyond a reasonable doubt. The court agrees with the weight of authority on this point: the term "likely" does not relieve the Government of its burden to establish the future dangerousness factor beyond a reasonable doubt. *See Montgomery*, 2014 WL 1347156, at \*37; *Williams*, 2013 WL 1335599, at \*33 (declining to strike future dangerousness factor alleging that defendant "represents a continuing danger to the lives and safety of other persons"); *United States v. Coonce*, No. 10-3029-01-CR-S-GAF, 2014 WL 1018081, at \*17 (W.D. Mo. Mar. 14, 2014); *United States v. Williams*, No. CR-05-920-RSWL, 2008 WL 4644830, at \*6 (C.D. Cal. Oct. 15, 2008) ("It is not illogical to say that the jury must find that Defendant is likely to commit future criminal acts beyond a reasonable doubt."). In *United States v. Umana*, 707 F.Supp.2d 621 (W.D.N.C.2010), the court considered the same argument made here—that the phrase "is likely" in alleging future dangerousness changed the Government's burden of proof. The court in *Umana* held:

---

[15] The court also denies the Defendant's request for a hearing on the admissibility of future dangerousness evidence. *See United States v. Johnson*, 915 F. Supp. 2d 958, 989 (N.D. Iowa 2013) ("pretrial preview of the evidence supporting aggravating factors is ordinarily unnecessary"); *United States v. Diaz*, CR 05-00167 WHA, 2007 WL 2349286, at \*7 (N.D. Cal. Aug. 14, 2007) (declining to grant a hearing on jury's ability to determine future dangerousness and victim impact evidence and deferring such hearing until before the sentencing phase).

> This argument is plainly without merit. The term "is likely" is necessary phrasing because, of course, one cannot predict future events with absolute certainty. The government still retains its required burden of proof, i.e., it must prove beyond a reasonable doubt that the defendant poses a danger to the lives and safety of others.

*Id.* at 635.

Furthermore, the court will instruct the jury in this case that the Government must prove the future dangerousness factor beyond a reasonable doubt. *See Coonce*, 2014 WL 1018081, at *17, citing *Lagrone v. Cockrell*, 2002 WL 1968246, at * 17 (N.D. Tex. Aug. 19, 2002) (use of the term "probability" in the "future dangerousness" aggravating circumstances" did not "impermissibly soften the burden of proof" and, in any event, in the instructions "the jury was informed in a clear manner that the State had to prove the future dangerousness special issue beyond a reasonable doubt"). The court finds that the word "likely" to describe the future dangerousness factor does not lower the Government's burden of proof.

        j.        *"Continuing Pattern of Violent Conduct," "Low Rehabilitative Potential," and "Lack of Remorse" as Separate, Stand-Alone Aggravating Circumstances.*

Merriweather further argues that language in the Notice alleging a "continuing pattern of violence," "low rehabilitative potential," or "lack of remorse" lessens the Government's burden of proof and violates the unanimity requirement because they are not alleged separately. (Doc. 234 at 18). The court will discuss only "continuing pattern of violence," as the Government does not allege the other two terms in the Notice. (Doc. 29 at 5-6). The Supreme Court has expressly recognized future dangerousness and a pattern of violent conduct as constitutionally permissible evidence. *Zant v. Stephens*, 462 U.S. at 886 n.22 (1983) ("Any lawful evidence which tends to show the motive of the defendant, his lack of remorse, his general moral character, and his predisposition to commit other crimes is admissible in aggravation.") *See also Simmons v. South*

*Carolina*, 512 U.S. 154 (1994); *California v. Ramos*, 463 U.S. 992, 1002–03, (1983); and *Jurek v. Texas*, 428 U.S. 262, 274-276 (1976).

The court also declines to strike this aggravating circumstance on the current record. Although the court is mindful of its obligation under § 3593(c) to exclude unfairly prejudicial evidence, the court cannot know at this stage of the case what evidence the Government plans to introduce to prove future dangerousness. *See United States v. Hall*, 10-03029-02-CR-S-GAF, 2014 WL 1356698 (W.D. Mo. Feb. 11, 2014) *report and recommendation adopted in part*, 10-3029-02-CR-S-GAF, 2014 WL 1356692 (W.D. Mo. Apr. 7, 2014) (holding that sufficiency of evidence especially heinous, cruel or depraved aggravating factor "will be a question for the jury to resolve"), citing *United States v. Williams*, 2004 WL 2980027, op. at 17 (S.D.N.Y. Dec. 22, 2004). ("a pre-trial motion [] is normally not the place to test the sufficiency of the government's evidence with respect to aggravating factors because notices of intent generally need not list specific evidence") and *United States v. Nguyen*, 928 F. Supp. 2d at 1541 (in upholding lack of remorse as permissible evidence to show future dangerousness, the court stated that it was "not comfortable with striking one of the government's aggravating factors without first knowing what evidence the government intends to introduce"). The parties will have the opportunity to address the evidence presented in support of the aggravating factors and to submit proposed instructions limiting that evidence. Based on these safeguards, Merriweather's motion to strike the challenged language is denied.

D.   MOTION TO STRIKE THE VICTIM IMPACT AGGRAVATING FACTOR (DOC. 240)

Merriweather challenges the Government's intention to admit victim evidence during sentencing on the following grounds: 1) the victim impact evidence as alleged is unconstitutionally vague, lacks specificity, and is broader than permitted by the FDPA (Doc. 240

at 2); 2) the Government's notice of the factor does not sufficiently narrow the class of defendants eligible for the death penalty (Doc. 240 at 3-4); and 3) the victim impact evidence should be excluded under the Eighth Amendment's heightened standard of reliability, and because its probative value is outweighed by the danger of unfair prejudice to the defendant, confusion of the issues, or a likelihood that the jury will be misled (Doc. 240 at 7); (4) the indictment does not contain an allegation of victim impact evidence (Doc. 240 at 8); 5) the victim impact evidence will render the penalty phase unreliable, unfair and arbitrary (Doc. 240 at 9); 6) and any victim impact evidence should be limited by the court "to very few family members who were directly affected by the victim's death" (Doc. 240 at 11). Additionally, Merriweather requests "specific, detailed advance notice of the evidence, preferably the text of any victim impact statements" that the Government seeks to introduce. (Doc. 240 at 3).

The FDPA expressly permits a jury to consider victim impact evidence. The Government may introduce evidence "concerning the effect of the offense on the victim and the victim's family" during the sentencing phase of the trial, including "oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information." § 3593(a)(2). See also 18 U.S.C. § 3592(c) ("[t]he jury . . . may consider any other aggravating factor for which notice has been given. . . .").

The Supreme Court has held that the Eighth Amendment permits the admission of "evidence about the victim and about the impact of the murder on the victim's family" at a capital sentencing hearing. *Payne v. Tennessee*, 501 U.S. 808, 827 (1991) ("A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be

imposed."). The scope and limit of victim impact evidence "is a matter for the court's discretion and must be determined with consideration for the constitutional limitation that the jury must not be influenced by passion or prejudice." *United States v. McVeigh*, 944 F. Supp. 1478, 1491 (D. Colo. 1996) (citing *Payne*, 501 U.S. at 825).

1.     *Vagueness Challenge to Victim Impact Evidence*

Merriweather alleges that the language describing the victim impact aggravating factor— "injury, harm, and loss" or "severe and irreparable harm" to the victim's family—is unconstitutionally vague. (Doc. 240 at 2). The Supreme Court has ruled that a review of an aggravating factor is "quite deferential" in favor of its constitutionality. *Tuilaepa*, 512 U.S. at 973. "As long as an aggravating factor has a core meaning that criminal juries should be capable of understanding," the Court has explained, "it will pass constitutional muster." *Jones*, 527 U.S. at 400, (quoting *Tuilaepa*, at 973) (internal quotation marks omitted).

In *Jones*, the Supreme Court discussed a comparable vagueness challenge to victim impact evidence in a FDPA case. While not dispositive to the holding, Justice Thomas, writing for a plurality, rejected the defendant's argument that the victim impact aggravating factor was too vague and "left the jury with ... open-ended discretion." *Id*. at 400. A capital sentencing jury, the Court stated, should not "have had difficulty comprehending that [the victim-impact factor] asked it to consider the victim's personal traits and the effect of the crime on her family." *Id*. The Court concluded that that the Constitution permits evidence "concerning the victim's personal traits and the effect of the crime on her family ... so long as ... victim impact factors are used to direct the jury to the individual circumstances of the case." *Id*. at 394. *See also Bourgeois*, 423 F.3d at 511 (the "jury could have had no difficulty understanding that it was directed by the victim impact aggravator to consider the particular effect of [the victim's] murder on her

family"); *United States v. Barnette*, 211 F.3d 803, 817-18 (4th Cir. 2000) (victim impact aggravating factor was not unconstitutionally vague as applied in defendant's case); *Montgomery*, 2014 WL 1347156 at *21 (victim impact allegation had a "core meaning" that directed the jury to the victims' "personal characteristics as individual human beings"); *United States v. O'Driscoll*, 203 F. Supp. 2d 334, 341 (M.D. Pa. 2002) (holding that the government's notice of intent to seek the death penalty was not impermissibly vague).

2.      *Overbreadth Challenge to the Victim Impact Factor*

Merriweather contends that the victim impact aggravating circumstance is also overbroad because it seems to apply to "every eligible defendant." (Doc. 240 at 5). An aggravating circumstance is overbroad if "the sentencer fairly could conclude that [it] applies to every defendant eligible for the death penalty." *Arave v. Creech,* 507 U.S. 463, 474 (1993); *Tuilaepa*, 512 U.S. at 972 (an aggravating factor "may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder"). While nearly every murder "will have an impact on the victim's family and friends," the Supreme Court observed in *Jones*, the frequent applicability of the victim impact factor does not render it constitutionally overbroad.

In *Jones*, the Supreme Court rejected a similar overbreadth argument that challenged the aggravating circumstances of victim vulnerability and victim impact. The Court reasoned that "though the *concepts* of victim impact and victim vulnerability may well be relevant in every case, *evidence* of victim vulnerability and victim impact in a particular case is inherently individualized." *Id*. at 401 (emphasis in original). A capital sentencing jury does not consider the victim impact aggravating factor's terms in the abstract – it is the Government's evidence and argument that make the basis of the factor clear. The Court concluded in *Jones* that as long as

30

victim impact evidence directs the jury's attention to the individual circumstances of the case, the aggravating circumstance of victim impact is not "overbroad in a way that offend[s] the Constitution." *Id.* at 402. *See also*, *Fields*, 516 F.3d at 944 (individualized assessment of victim impact evidence sufficient to satisfy the purpose of a non-statutory aggravator at the selection stage of sentencing);. *Bourgeois*, 423 F.3d at 510-11 ((victim impact and victim vulnerability aggravators are not unconstitutionally overbroad or vague); *United States v. Savage*, Nos. 07-550-03-05, 2013 WL 1934531 (E.D. Pa. May 10, 2013) (same); *O'Driscoll*, 203 F. Supp. 2d at 341 ("We are not convinced that the government's notice of intent to seek the death penalty is so vague that it is impossible for defense counsel to undertake an investigation and prepare a defense.").

The court finds that the Government's notice of its intent to present victim impact evidence does not violate due process or the Eighth Amendment's prohibition against the arbitrary and capricious imposition of the death penalty. Accordingly, the court will deny the Defendant's motion to strike the non-statutory aggravating factor of victim impact and to exclude evidence in support of that aggravating factor.

3.   *The FDPA's Narrowing Function*

Merriweather also argues that the victim impact aggravating factor must be dismissed because it is overbroad and fails to sufficiently narrow the class of murderers for whom the death penalty is available. (Doc. 240 at 5). The court discusses these arguments below.

Under the FDPA, when a defendant has been found guilty of a death-eligible crime, a factfinder must find beyond a reasonable doubt that the defendant had the requisite intent by finding at least one "gateway" mental intent factor under 18 U.S.C. § 3591(a)(2), and that at least one statutory aggravating factor under § 3592(c) exists. *Jones,* 527 U.S. at 376-77. Only after

31

these eligibility determinations are made may the factfinder proceed to the "selection" stage, "where the sentencer determines whether a defendant eligible for the death penalty should in fact receive that sentence." *Tuilaepa*, 512 U.S. at 972.  At the selection stage, the jury weighs aggravating factors against mitigating factors to make "an individualized determination on the basis of the character of the individual and the circumstances of the crime" of whether a defendant should receive a death sentence. *Zant v. Stephens*, 462 U.S. at 879; 18 U.S.C. §§ 3593(d)-(e) (requiring the factfinder to weigh mitigating and aggravating factors to determine whether a sentence of death is justified and discussing burdens of proof during sentencing). It is only at the selection stage that non-statutory aggravating circumstances become relevant. Although statutory aggravating factors can be both eligibility factors and selection factors, and thus arguably serve a narrowing function, non-statutory aggravating factors, such as victim impact, serve only the selection function in determining the proper sentence. *See* 18 U.S.C. § 3593(e). Because the eligibility function is completed before victim impact evidence is relevant or introduced, such evidence does not serve a narrowing function. *Tuilaepa,* 512 U.S. at 972 (aggravating and mitigating circumstances are relevant to the factfinder's "individualized determination" of the sentence that a death-eligible defendant should receive); *Fields*, 516 F.3d at 944 (individualized assessment of victim impact evidence sufficient to satisfy the purpose of a non-statutory aggravator at the selection stage of sentencing). Because the non-statutory aggravating factor of victim impact is not meant to serve a narrowing function under the FDPA, the factor is not constitutionally infirm merely because it fails to narrow the class of death-eligible defendants.

4.    *Explanation of Factors*

Merriweather further contends that the victim impact aggravator as currently alleged fails to provide constitutionally adequate notice of the facts against which he must defend at the penalty phase of this case. As discussed above, § 3593(a) does not require elaborate evidentiary detail about aggravating factors – the Notice of Intent must simply inform the defendant that the Government intends to seek the death penalty and "set[] forth the aggravating factor or factors that the government ... proposes to prove as justifying a sentence of death." 18 U.S.C. § 3593(a). *LeCroy*, 441 F.3d at 929 ("[A]lthough there is a right to advance notice of the charges, there is no extant constitutional right to advance notice of the evidence to prove such charges in a capital sentencing hearing.") (citing *Gray v. Netherland*, 518 U.S. 152, 166-70 (1996)); *Battle*, 173 F.3d at 1347 ("The Government is not required to provide specific evidence in its notice of intent [to seek the death penalty]"); *Chandler*, 996 F.2d at 1089 (describing a comparable notice provision in 21 U.S.C. § 848(h) as requiring only that the government "provide the defendant with a list setting forth each aggravating factor that the government will attempt to prove as a basis for the imposition of the death penalty.").   *See also United States v. Higgs,* 353 F.3d 281, 325 (2003) ("The FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor, ... not notice of the specific evidence that will be used to support it."); *United States v. Lee,* 274 F.3d 485, 495 (8th Cir. 2001) (Although [the defendant] had a right to advance notice of the aggravating factors the government sought to prove at sentencing, [he] had no right to advance notice of the specific evidence the government would use to prove those factors"); *United States v. Taylor,* 316 F. Supp. 2d 730, 741 (N.D. Ind. 2004) ("[E]ach Notice of Intent informs the Defendant that the Government intends to seek the death penalty and lists the aggravating factors that the Government will seek to prove. The statute requires no more.").

Consistent with these persuasive authorities, the court will not strike the Notice on the ground that it contains insufficient information about the aggravating factors.

### 5. *Reference to Impact on Colleagues*

Merriweather argues that the court should instead limit victim-impact evidence to the injury and loss suffered by the victim's family and close friends, and he objects to any evidence of the impact on "work colleagues of the decedents [] and Wachovia Bank." (Doc. 240 at 4). But the FDPA does not preclude testimony from colleagues from its definition of victim impact evidence. To be sure, one provision of the FDPA describes victim impact evidence as including "the extent and scope of the injury and loss suffered by the victim and the victim's family," 18 U.S.C. § 3593(a)(2), but that section also expressly permits the introduction of "any other relevant information." The latter phrase may be "read most naturally as a catch-all for what may be deemed "relevant" by the court." *United States v. Whitten*, 610 F.3d 168, 188 (2d Cir. 2010) (emphasis added).

In *Payne*, the Supreme Court repeatedly stated that loss felt by a victim's "community" or by "society" is part of the specific harm caused by a murder. Those terms of community and society are broad enough to encompass evidence from a victim's co-workers and colleagues. *Payne*, 501 U.S. at 823 (victim-impact evidence "is designed to show ... each victim's 'uniqueness as an individual human being,' whatever the jury might think the loss to the community resulting from his death might be") (internal quotations omitted); *id*. at 825 ("[T]he State has a legitimate interest in … reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family.") (emphasis added) (internal quotation marks omitted) (quoting *Booth v. Maryland*, 482 U.S. 496, 517 (1987) (White, J., dissenting))).

Moreover, federal courts have interpreted the FDPA to permit the admission of victim impact evidence from co-workers of the victim at capital sentencing hearings. Courts have found evidence from work colleagues particularly relevant, when, as occurred in this case, the crime was related to a victim's employment. *See Montgomery*, 2014 WL 1347156 at *23 (allowing testimony of postal employees' co-workers as "precisely the kind of evidence contemplated by the Supreme Court in demonstrating a unique, rather than utilitarian, loss" in *Payne*); *United States v. Runyon*, 667 F. Supp. 2d 648, 649-50 (E.D. Va. 2009) (victim impact evidence presented from the victim's friends and Navy shipmates appropriately admitted at sentencing in murder-for-hire scheme committed in civilian area); *Whitten*, 610 F.3d at 188-90 (testimony of fellow police officers); *Fields*, 516 F.3d at 928 (distinguishing victim impact evidence from fellow officers about the victim killed while on duty from that of "co-workers per se" as having a "qualitatively different character."); *United States v. Barrett*, 496 F.3d 1079, 1098-99 (10th Cir. 2007) (testimony of fellow state troopers); *United States v. Bernard,* 299 F.3d 467, 478-80 (5th Cir. 2002) (former coworker).

In line with other courts that have considered this issue, the court finds that the Government's proposed victim-impact evidence from the victims' colleagues at Wachovia Bank is constitutionally admissible. The offense here occurred at the bank, involved its employees, and the victims' co-workers may have evidence of the victims' personal characteristics. The court, in keeping with its general responsibility to assess evidence admissibility and its obligation under § 3593 to exclude impermissibly prejudicial evidence, will endeavor to limit victim impact testimony from straying into areas that could divert the jury from fairly considering and weighing the evidence.

E.      MOTION FOR DISCLOSURE OF FUTURE DANGEROUSNESS AND VICTIM IMPACT
        EVIDENCE (DOC. 237)

The court is "mindful of its 'authority and responsibility to control the proceedings consistently with due process.'" *United States v. Glover*, 43 F. Supp. 2d 1217, 1235 (D. Kan. 1999) (quoting *Payne*, 501 U.S. at 836 (Souter, J., concurring). That responsibility includes ensuring that Defendant has sufficient information to undertake an investigation and prepare a defense to the capital charges and that the court has sufficient information to limit any inflammatory impact evidence that might "risk a verdict impermissibly based on passion, not deliberation." *See Payne*, 501 U.S. at 833 (O'Connor, J., concurring) (noting that *Payne* did not overrule *Booth's* prohibitions against the admission of victim's family members' "opinions of the victim's family about the crime, the defendant, and the appropriate sentence").

Again, however, the court finds that the Defendant's motion is not ripe for consideration at this time. The Government is not obligated to provide detailed information about aggravating factors in the indictment or in its Notice of Intent. Therefore, the court defers Defendant's disclosure request with leave to move for additional information about the Government's aggravating factors should a penalty phase be necessary.

## III.    CONCLUSION

Accordingly, for the reasons stated herein, Merriweather's motions to strike or exclude the aggravating factors alleged in Government's Notice of Intent to Seek the Death Penalty (Docs. 232, 233, 234, 240) are due to be denied. Defendant's request for the court to require the Government to provide an informative outline of its evidence of aggravating factors (Doc. 237) is premature and due to be administratively terminated without prejudice to his right to seek this relief at a later time, as appropriate.  An order consistent with this ruling will issue.

**DONE** and **ORDERED** this June 25, 2014.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE